United States District Court
Southern District of Texas
**ENTERED**
November 24, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSIE CHRISTIAN SALGADO, | § § | CIVIL ACTION NO. 4:18–cv–03066 |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| ANTONY J. BLINKEN, | § | |
| Defendant. | § | |

MEMORANDUM AND OPINION
ENTERING FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Department of State revoked the passport of Plaintiff Jessie Christian Salgado in 2013 and refused to reissue it upon application in 2017. Pending here is his petition for a declaratory judgment under 8 USC § 1503(a) and 28 USC § 2201 that he is a national of the United States and entitled to have the Department of State issue him a passport. Dkt 1.

There's no dispute that Jessie Salgado has resided continuously in the United States at least since April of 1985, when he was one month old. The only question is whether he has met his burden under 8 USC § 1503(a) to prove by a preponderance of the evidence that he was also born here. In short, he has.

The petition is granted, and the requested declaratory judgment will enter in Plaintiff's favor.

1. Findings of fact

An evidentiary hearing was conducted in this matter on June 29th and July 7th of 2021. Testimony was heard from the following witnesses in this order:

- o Virginia Salgado, the mother of Jessie Salgado, Dkt 62 at 28–88;
- o Maricella Dunn, who assisted with Jessie Salgado's birth and signed his Texas birth certificate, id at 92–105;
- o Prodigios Salgado, the father of Jessie Salgado, id at 106–44.
- o Ana Novoa Cipriani, the ex-wife of Jessie Salgado, id at 145–82;
- o Modesta Carlos de Martinez, a friend of the Salgados who owned the home where Virginia stayed at various times, id at 183–89; and
- o Jessie Salgado, the Plaintiff in this action, id at 190–202.

The following narrative is found to be accurate based upon the weight of credible evidence and testimony received.

Plaintiff Jessie Christian Salgado was born to the marriage of Prodigios and Virginia Salgado. The two met and began living together in Conroe, Texas in early 1984 shortly after they had each illegally entered the United States. They traveled to Durango, Mexico in August 1984 to seek the blessing of Virginia's father to their union. Blessing received, they married there in September 1984. Virginia also learned at that time that she was pregnant with Jessie. See Dkt 33 at 5 (stipulation); Dkt 62 at 31–33 (Virginia testimony), 107–09 (Prodigios testimony).

Virginia and Prodigios attempted to illegally reenter the United States in September 1984, but they were apprehended by immigration authorities. Virginia was returned to Mexico, and Prodigios was taken into federal custody. See id at 33–34 (Virginia testimony), 109–11 (Prodigios testimony).

Two days after returning to Mexico, Virginia once again illegally reentered the United States. This time, she wasn't apprehended, and she traveled back to Conroe, Texas to stay with her friends Modesta and Samuel Martinez. Virginia then moved in December 1984 to the home of Isabel and Fredo Garza located at 505 Hildred Avenue in Conroe, Texas. See id at 34–36 (Virginia testimony), 185–86 (Martinez testimony).

She gave birth to Jessie at that residence on March 8, 1985. Isabel Garza was by her side. See id at 37 (Virginia testimony), 183–87 (Martinez testimony). Sister Isidra Hernandez and Maricella Dunn were also present. Dunn testified that Sister Isidra was a Catholic nun who engaged in social work, and Dunn often accompanied her to serve as her interpreter. The pair were expecting to take Virginia to the hospital, but when they arrived at the Garza residence, Virginia's labor was at its conclusion. And so they assisted Virginia at the Garza home. Dunn testified that Sister Isidra cut the umbilical cord with her assistance. Dunn also testified that neither she nor Sister Isidra were midwives, and Dunn never participated in anything like that before or after. See id at 93–98 (Dunn testimony).

Virginia left the Garza residence four days after giving birth and returned with Jessie to Durango. She reunited there with her family and Prodigios, who had also traveled there upon release from federal custody a few days earlier on March 5th. See id at 39 (Virginia testimony), 111–12, 120 (Prodigios testimony). Virginia and Prodigios then registered Jessie on March 14, 1985, listing his birthplace as Durango, Mexico but without a specific address. See Dkt 33 at 5 (stipulation); see also Dkt 51-2 (original Mexican birth certificate). Virginia testified that she lied about Jessie's birthplace at the time because she expected to remain in Mexico and wanted him to have the benefits of Mexican citizenship. But Prodigios was unable to find work. See Dkt 62 at 38–41 (Virginia testimony), 110–13 (Prodigios testimony); 66-1 at 6 (Texas DHHS proceeding).

The Salgados again illegally returned to Conroe in April 1985—this time with one-month-old Jessie. See id at

3

41 (Virginia testimony), 113 (Prodigios testimony). Virginia then registered Jessie's birth a second time on March 28, 1986. See Dkt 33 at 6 (stipulation). Dunn, Sister Isidra, and Isabel Garza accompanied her. See Dkt 62 at 42–43 (Virginia testimony), 95 (Dunn testimony), 114 (Prodigios testimony). Dunn testified that she wrote and signed a letter at the requirement of a court employee describing Jessie's birth in a manner consistent with her testimony, and that she swore an oath that the letter described the events accurately. See id at 96–98. Texas then issued a delayed birth certificate identifying 505 Hildred Avenue as Jessie's place of birth, with attestation by Virginia and Dunn. See Dkt 51-1 (Texas birth certificate); see also Dkt 62 at 44 (Virginia testimony), 97 (Dunn testimony).

Testimony and evidence established that Virginia later became a US citizen in 1998, and that Prodigios is a legal resident whose application for citizenship is still pending. See id at 63 (Virginia testimony), 140–41 (Prodigios testimony); see also Dkt 61-1 at 3 (Virginia certificate of naturalization); Dkt 63-1 (Prodigios immigration file). It also established that Jessie was an exceptional student, has an Associates degree in Applied Science in computer maintenance, currently works for Houston State University as a systems administrator, has voted multiple times, and has no criminal record. See Dkt 62 at 59–62 (Virginia testimony), 196–98 (Jessie testimony); see also Dkts 51-12–51-14, 51-17 (academic records). He also has four children who are US citizens by birth. Dkt 62 at 191.

The Department of State issued Jessie a US passport in February 2010. See Dkt 1-1 at 4; see also Dkt 62 at 193 (Jessie testimony). It then revoked that passport in 2013 and refused to reissue it upon application in 2017. The stated reason was the existence of the original Mexican birth certificate noted above that predated Jessie's Texas birth certificate. See Dkt 1-1 at 4–7; see also Dkt 1 at 3.

The Mexican birth certificate had been brought to the attention of federal authorities by Jessie's former wife, Ana Novoa Cipriani, who the Secretary presented as his only

4

witness. She testified to having overheard a drunken conversation among Jessie and his relatives in which someone stated that Jessie was actually born in Mexico. See Dkt 62 at 156–59, 163. She couldn't remember details or the exact date of that conversation, but speculated that it was perhaps around 2009 or 2010. See id at 157–58, 171–72. It wasn't until the midst of a bitter, prolonged divorce commencing in 2012 that she pursued inquiry on this point, acquired Jessie's original Mexican birth certificate, and submitted it to the Houston Passport Office. See id at 155–56, 163–64, 172–76, 178. It was established that she'd never confronted Jessie about the conversation, and that she in fact had previously relied upon Jessie's citizenship to pursue her own citizenship. See id at 159, 164, 168–69, 173–74. While true that Cipriani did locate the original Mexican birth certificate, her recollection of the alleged statement—the Secretary's only evidence explaining the existence of that birth certificate—is appropriately discounted, considering both the context within which the statement was originally heard and the motivation for its intended use. Instead, the testimony of Virginia as to her motives for obtaining the original Mexican birth certificate is credited as the accurate account of its inception.

Both Mexico and Texas agree that Jessie was born in the United States, not Mexico. On petition by Virginia and Prodigios in 2015, the Mexican government annulled the Mexican birth certificate and issued a new one stating Jessie's place of birth as Conroe, Texas. See Dkt 62 at 46–49 (Virginia testimony), 115 (Prodigios testimony); see also Dkts 51-2, 51-3, & 51-4. And in a 2018 proceeding, an administrative law judge with the Texas Department of Health and Human Services found that "a certified copy of the Texas birth certificate of Jessie Christian Salgado" should be issued. See Dkt 66-1 (Texas DHHS order); see also Dkt 62 at 53, 80 (Virginia testimony), 115–16 (Prodigious testimony), 195 (Jessie testimony).

Jessie brought this action in 2018 under 8 USC § 1503(a) and 28 USC § 2201 for a declaratory

5

judgment that he is a national of the United States and entitled to have the Department of State issue him a passport. Dkt 1. He originally brought action seeking similar relief under the Administrative Procedure Act, 5 USC § 701 et seq; the Passport Act, 22 USC § 211a et seq; the Mandamus Act, 28 USC § 1361; and the All Writs Act, 28 USC § 1651. Those claims were previously dismissed by separate order. See Dkt 14.

2. Conclusions of law

Section 1503(a) of Title 8 to the United States Code states:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States.

See also *Cobos v Kerry*, 2015 WL 3965660, \*6 (SD Tex), citing *Vance v Terrazas*, 444 US 252, 256 (1980).

As used in § 1503(a), the term *national of the United States* means "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 USC § 1101(a)(22). The only question presented here concerns the former provision, being whether Jessie is a citizen of the United States.

The parties agree that Jessie has lived in the United States continuously at least since he was one month old. See Dkts 69 at 2 (Secretary's proposed findings) & Dkt 70 at 4 (Jessie's proposed findings). But there are only two sources of citizenship—birth and naturalization. *Miller v Albright*, 523 US 420, 423 (1998). "The court may not grant

citizenship out of equity or in the interests of justice." *Garcia v Clinton*, 915 F Supp 2d 831, 834 (SD Tex 2012); see also *Cobos*, 2015 WL 3965660 at *6, citing *INS v Pangilinan*, 486 US 875, 883–84 (1988). The plaintiff in a § 1503 action instead bears the burden of proving by a preponderance of the evidence that he or she is an American citizen. *Escalante v Clinton*, 386 F App'x 493, 496 (5th Cir 2010, *per curiam*), citing *De Vargas v Brownell*, 251 F2d 869, 870 (5th Cir 1958).

The court must resolve doubts "in favor of the United States" and against those seeking citizenship. See *Bustamante-Barrera v Gonzalez*, 447 F3d 388, 395 (5th Cir 2006). But proceedings under § 1503 involve presentation of evidence to the bench. This in turn means that the court must weigh the evidence, determine credibility of witnesses, and resolve conflicting testimony. See *Garcia v Limon*, 2021 WL 3745186, *3 (SD Tex); FRCP 52(a). The Fifth Circuit admonishes that the testimony of interested witnesses often isn't credible. See *De Vargas*, 251 F2d at 871. Even so, credibility determinations regarding interested witnesses remain with the district court and can tip the balance where the issue boils down to a clear dispute of fact. See FRCP 52(a)(6); *United States v Bates*, 850 F3d 807, 811 (5th Cir 2017).

Beyond the testimony, competing birth certificates—one from Mexico (since annulled) and another from the State of Texas—are also in evidence here. Section 192.023 of the Texas Health and Services Code provides for the issuance of a delayed birth certificate that is requested "at least one year but less than four years" after the child's birth. While such a certificate is considered "primary evidence of birth in the United States," a foreign birth record that is contemporaneously filed with birth is "almost conclusive evidence" of alienage. *Garcia*, 915 F Supp 2d at 834, quoting 22 CFR § 51.42 and *Pinto-Vidal v Attorney General of the US*, 680 F Supp 861, 862 (SD Tex 1987); see also Tex Health & Safety Code § 191.052; *Cobos*, 2015 WL 3965660 at *6. Courts have thus "found that a delayed birth certificate is either entitled to less

7

evidentiary weight than a contemporaneously filed birth certificate or to no evidentiary weight, particularly when other evidence indicates foreign birth or when the plaintiff can only provide self-serving attestations of United States birth." *Cobos*, 2015 WL 3965660 at *7, citing *Patel v Rice*, 403 F Supp 2d 560, 564 (ND Tex); *De Vargas*, 251 F2d at 871–72; *Reyes v Neely*, 264 F2d 673, 674–75 (5th Cir 1959); *Escalante*, 386 F App'x at 493–99.

The Secretary contends that Virginia's birth-to-registration timeline strains credulity, for it would mean that Virginia began a return journey back to Mexico four days after giving birth. And, for example, the Secretary points out that while Prodigios was in federal custody, he placed telephone calls only to his in-laws' house in Mexico as opposed to the Martinez residence—thus implying that Virginia likely remained in Mexico. Dkt 69 at 2. But Prodigios testified that he only called his father-in-law once, and he explained that he didn't phone the Martinez residence because Virginia didn't have a way to accept and pay for collect calls. Dkt 62 at 110–11, 120. Those assertions weren't rebutted.

There is certainly conflicting evidence on these points. Even so, the greater weight of the testimony and documentary evidence support Virginia's account of Jessie's birth in Conroe, Texas. This is so because it isn't merely Virginia's putatively "self-serving attestations of United States birth" that favor Jessie. *Cobos*, 2015 WL 3965660 at *7. Instead, her behavior over the past thirty years in many ways confirms her testimony. For if she believed or knew otherwise, United States law presented her opportunities to secure citizenship for Jessie through naturalization. For example, when Virginia became a US citizen in 1998, it appears that she could have petitioned for his citizenship, as Jessie was fourteen at the time. See 8 USC § 1433, amended by the Child Citizenship Act of 2000, Public Law No 106-395; see also Dkt 62 at 64–65 (Virginia testimony); Dkt 61-1 at 3 (Virginia certificate of naturalization). And Jessie potentially could have automatically qualified for citizenship in 2001 had Virginia

pursued his permanent residency. See 8 USC § 1431(a). Yet Virginia forewent such opportunities at every juncture, instead expressly representing that Jessie was a US citizen by birth. For example, see Dkt 61-1 at 44 (naturalization application listing date and place of birth in Texas), 82 (attaching Texas birth certificate).

Perhaps more importantly, one witness was never impeached as to the circumstances of Jessie's birth—Maricella Dunn. Her testimony firmly established her as an entirely disinterested witness, as she had no prior or continuing friendship with the Salgados and was present at Jessie's birth only because she was assisting Sister Isidra that day with translation. Her testimony was also entirely credible as to why she remembered this birth so vividly—it was the only one that she ever attended in such capacity. And so this was also the only birth in which she had ever assisted in subsequent registration. Id at 95, 98, 103–04.

For its part, the Secretary has no evidence—but only inference—as to what it asserts must have instead happened in Mexico. Such inference is properly rejected where disinterested, unimpeached testimony exists to establish the details of Jessie's birth in Texas. As stated in Instruction 3.4 of the Fifth Circuit Civil Pattern Jury Instructions, "The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness." That has meaning even in this context of presentation of evidence to the bench. See *Knoll v Banner Life Insurance Co*, 2013 WL 1390006 (WD La) (citing instruction in bench trial). For here, Dunn's testimony is unimpeached for the simple reason that the Secretary declined entirely to cross-examine her in any meaningful way. Dkt 62 at 99–103. The Secretary instead seeks to impeach Dunn by implication from Cipriani's testimony. See Dkt 69 at 4–5 (proposed findings of fact). But as already determined, the lack of clarity in Cipriani's recollection as to what she allegedly

overheard, along with the motivation for her original use of the alleged statement, greatly diminishes its reliability.

In sum, the fact that a credible and disinterested witness observed Jessie's birth in Conroe, Texas is enough to rebut any "presumption of alienage" created by the since-annulled Mexican birth certificate. Such finding also conforms with recent, express determinations in both Mexico and the State of Texas. See Dkts 51-4 (Mexican proceeding) & 66-1 (Texas DHHS order).

   3. Conclusion

Plaintiff Jessie Christian Salgado has met his burden of proof to establish that he is a national of the United States by birth. He is thus entitled to a United States passport.

A final declaratory judgment will be issued in favor of Jessie Salgado by separate order.

SO ORDERED.

Signed on November 24, 2021, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge